UNITED STATES DISTRICT COURT                          **(ECF)**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
STEVEN MERCIER,                       :   10 Civ. 7951 (ALC) (JCF)
                                      :
            Plaintiff,                :        REPORT AND
                                      :        <u>RECOMMENDATION</u>
      - against -                     :
                                      :
RAYMOND KELLY, Commissioner of the    :
New York City Police Department,      :
both as Commissioner and in his       :
individual capacity; and THE CITY     :
OF NEW YORK,                          :
            Defendants.               :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE ANDREW L. CARTER, JR., U.S.D.J.:

     To succeed on an equal protection claim, a party must show

that he was treated differently from persons to whom he is

similarly situated in all material respects; in other words, there

must be a comparison of "apples to apples." <u>Clark v. Boscher</u>, 514

F.3d 107, 114 (1st Cir. 2008); <u>see</u> <u>Mosdos Chofetz Chaim, Inc. v.</u>

<u>Village of Wesley Hills</u>, 815 F. Supp. 2d 679, 696 (S.D.N.Y. 2011).

Here, the "Big Apple's" effort to equate himself with the "Naked

Cowboy" is fruitless.

     Steven Mercier brings this action pursuant to 42 U.S.C. § 1983

("Section 1983") against the City of New York (the "City") and

Commissioner Raymond Kelly of the New York City Police Department

(the "NYPD"), in both his official and individual capacities.  Mr.

Mercier alleges that the NYPD's enforcement of New York City

Administrative Codes against him violated his constitutional

1

rights.   The defendants now move for summary judgment pursuant to

Rule 56 of the Federal Rules of Civil Procedure.   For the reasons

that follow, I recommend that the defendants' motion be granted.

<u>Background</u>

    The following facts are viewed in the light most favorable to

the non-moving party in accordance with the standard governing a

motion for summary judgment.[1]

_____

    [1] Rule 56.1 of the Local Rules of the Southern and Eastern
Districts of New York ("Local Civil Rules") requires a motion for
summary judgment to be accompanied by a statement of the material
facts that the movant believes undisputed, with citations to
admissible evidence.   Local Civil Rule 56.1(a) & (d).   The party
opposing summary judgment must submit, with his opposition, a
statement responding to each of the proposed undisputed facts, also
with citations to admissible evidence.   Local Civil Rule 56.1(b) &
(d).   The plaintiff did not submit a Local Rule 56.1 statement with
his papers opposing the defendants' motion.   Nevertheless, district
courts have "broad discretion to determine whether to overlook a
party's failure to comply with local court rules," and a court "may
in its discretion opt to 'conduct an assiduous review of the
record' even where one of the parties has failed to file [a Local
Rule 56.1] statement."  <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 73
(2d Cir. 2001) (quoting <u>Monahan v. New York City Department of
Corrections</u>, 214 F.3d 275, 292 (2d Cir. 2000)).   Where the court's
independent review of the record yields evidence contrary to a
given assertion in the moving party's Local Rule 56.1 statement, or
where a party fails to support an assertion by citing admissible
evidence, the court may reject that assertion.   <u>Id.</u> at 73-74.
Conversely, where the moving party's Local Rule 56.1 statement is
not contradicted by the court's review of the record, then the
party's assertions will be "deemed admitted as a matter of law" for
the purposes of a summary judgment motion. <u>See, e.g.</u>, <u>Chitoiu v.
UNUM Provident Corp.</u>, No. 05 Civ. 8119, 2007 WL 1988406, at *1 &
n.1 (S.D.N.Y. July 6, 2007) (granting summary judgment against <u>pro
se</u> plaintiff who failed to respond to defendant's Local Rule 56.1
statement of facts).   My review of the record did not reveal any
facts to contradict the relevant facts in the defendants' Rule 56.1

Mr. Mercier is a licensed street performer in New York and has regularly performed in the Times Square area of Manhattan for a number of years. (Defendants' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Def. Rule 56.1 Statement"), ¶¶ 1, 7; Complaint ("Compl."), ¶ 10). He performs as the "Big Apple," in a costume that consists of big yellow and white shoes, brown sweat pants, brown long sleeved shirt, yellow shorts with the word "New York" printed on them, white gloves, and a head that resembles a large apple. (Def. Rule 56.1 Statement, ¶ 5; Compl., ¶ 10).

The Complaint alleges several interactions between the plaintiff and NYPD officers that occurred between 2006 and 2009 while he was performing in the Times Square area. On August 17, 2006, the plaintiff was cited for vending within seven feet of a crosswalk and for vending without a proper license in violation of New York City Administrative Code ("Administrative Code") § 20-465(e) and (g). (Def. Rule 56.1 Statement, ¶¶ 10-12; Compl., ¶ 13). On or about March 23, 2008, two NYPD officers told the plaintiff that he could no longer vend near the intersection of 44th Street and Broadway because there was no street performing allowed in the area. (Compl., ¶ 14). On or about July 12, 2009,

_____

Statement. Therefore, I have taken those facts as true.

several NYPD officers pushed the plaintiff, told him to remove his Big Apple costume, and told him to leave the area. (Compl., ¶ 15). The plaintiff was also issued citations for peddling in a prohibited zone in violation of Administrative Code § 20-465 and for disorderly conduct and failure to comply with a law officer in violation of New York Penal Law § 240.20. (Compl., ¶ 15). On or about August 8, 2009, two NYPD officers told the plaintiff that he could not vend in Times Square, but they did not inform him which law he was violating and simply chased him away. (Compl., ¶ 16). Since that date, the plaintiff has rarely returned to the area to perform. (Compl., ¶ 16). On many other occasions, police officers approached the plaintiff, and upon verifying his valid license to vend, allowed him to continue performing in the area. (Compl., ¶ 17).

Mr. Mercier claims that the NYPD selectively targeted him, harassed him, and forced him to move away from the Times Square area, depriving him of his right to perform as the Big Apple. (Compl., ¶¶ 24-30). He also asserts that the officers do not bother many other vendors or street performers, including the "Naked Cowboy."[2] (Compl., ¶¶ 22, 25). When the plaintiff asked

---

[2] The "Naked Cowboy" also performs in the Times Square area. He plays a guitar, wearing only cowboy boots, a cowboy hat, and briefs with words "Naked Cowboy" printed on them.

the officers why the Naked Cowboy was never harassed, an officer allegedly told him that "the Mayor said the Naked Cowboy is popular, even iconic, and for that reason was never to be bothered." (Compl., ¶ 28).

The Complaint alleges that (1) Administrative Code § 20-465 violates the First and Fourteenth Amendments to the extent it attempts to restrict street performance in the Times Square area, and (2) the defendants' enforcement of Administrative Code § 20-465 constitutes selective enforcement, in violation of the First and Fourteenth Amendments.

Discussion

    A.  <u>Summary Judgment Standard</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 285-86 (2d Cir. 2002) (citing former Rule 56(c)); <u>see also</u> <u>Andy Warhol Foundation for the Visual Arts, Inc. v. Federal Insurance Co.</u>, 189 F.3d 208, 214 (2d Cir. 1999).  The moving party bears the initial burden of identifying "the absence of a genuine issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,

323 (1986).   The opposing party then must come forward with "specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotation marks omitted).   Where the nonmovant fails to make "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted.   Id. at 322.

In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party.[3]   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Vann v. City of New York, 72 F.3d 1040, 1048-49 (2d Cir. 1995).   Nevertheless the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," Anderson, 477 U.S. at 249 (citation omitted), and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative.   Id. at 249-50.   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"

---

[3]  Although Mr. Mercier is now proceeding pro se, he had initially retained counsel, who drafted the Complaint.  Therefore, the pleading need not be liberally construed.

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288 (1968)).

In addition, a party may object if the material supporting or disputing a fact cannot be presented in an admissible form.  See Fed. R. Civ. P. 56(c)(2).  Accordingly, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."  Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997).

B.   First Amendment Claims

The Complaint alleges that Administrative Code § 20-465 violates the First Amendment on its face and in its application because it restricts protected speech in the Times Square area.[4] (Compl., ¶¶ 57, 62).  However, I need not address this claim because the plaintiff abandoned the claim by failing to address the argument in any way in opposition to the defendants' motion for summary judgment.  See, e.g., Douglas v. Victor Capital Group, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (collecting cases).  On this basis alone the Court could grant summary judgment.  Id.; Taylor v.

---

[4] The plaintiff also alleges that Administrative Code § 20-465 violates the Fourteenth Amendment but does not explain the basis for such an allegation in the Complaint or in his brief in opposition.  (Compl., ¶ 57).  Accordingly, this claim should be dismissed.

<u>City of New York</u>, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003).
Accordingly, the defendants' motion for summary judgment should be
granted as to the plaintiff's First Amendment claims.

    C.   <u>Equal Protection Claim</u>

    Mr. Mercier alleges that the defendants violated his rights
under the Fourteenth Amendment by selectively enforcing
Administrative Code § 20-465 against him while not enforcing it
against other vendors or street performers. (Compl., ¶¶ 60, 64).

    "The Equal Protection Clause requires that the government
treat all similarly situated people alike." <u>Harlen Associates v.
Incorporated Village of Mineola</u>, 273 F.3d 494, 499 (2d Cir. 2001).
To prevail on a claim of selective enforcement, a plaintiff must
show both (1) that he was "'treated differently from other
similarly situated individuals,'" and (2) that "'such differential
treatment was based on impermissible considerations such as race,
religion, intent to inhibit or punish the exercise of
constitutional rights, or malicious or bad faith intent to injure
a person.'" <u>Abel v. Morabito</u>, No. 04 Civ. 7284, 2009 WL 321007, at
*4 (quoting <u>Harlen Associates</u>, 273 F.3d at 499); <u>see</u> <u>LeClair v.
Saunders</u>, 627 F.2d 606, 608-10 (2d Cir. 1980). Mr. Mercier fails
to satisfy either prong of this test.

    1.  <u>Differential Treatment</u>

    To establish the first prong, a plaintiff must show that (1)

"the persons with whom . . . [he] compares himself . . . [are] similarly situated in all material respects," <u>Estate of Morris v. Dapolito</u>, 297 F. Supp. 2d 680, 686 (S.D.N.Y. 2004) (internal quotation marks omitted), and (2) that the defendants knew there were similarly situated individuals and "consciously applied a different standard" to the plaintiff, <u>LaTrieste Restaurant v. Village of Port Chester</u>, 188 F.3d 65, 70 (2d Cir. 1999).  The plaintiff contends that he was treated differently from the Naked Cowboy to whom he is similarly situated.  (Compl., ¶¶ 25, 59; 56.1 Statement, ¶¶ 14-15; Plaintiff's Affidavit in Opposition and Memorandum of Law in Response to Motion to Dismiss Plaintiff's Complaint Pursuant to F.R.C.P. 12 (b)(6)[5] ("Pl. Memo.") at 8).

However, Mr. Mercier has produced no facts to establish that he is similarly situated in all material respects to the Naked Cowboy.  There has been no description of the nature of the Naked Cowboy's activities or whether he performs in the same location and at the same time of the day as the plaintiff.  For example, the NYPD officers involved in the August 19, 2006, incident affirmed that they observed the plaintiff vending in a prohibited area.  (Rule 56.1 Statement, ¶¶ 11-13).  If the plaintiff was vending in

---

[5] As noted, the defendants have brought a motion for summary judgment under Rule 56, not a motion to dismiss under Rule 12(b)(6).

an illegal location and the Naked Cowboy was not, then the two are not similarly situated.   While the plaintiff need not show an "exact correlation" between himself and the Naked Cowboy, to survive a motion for summary judgment, he must produce sufficient facts for a jury to find that they were "roughly equivalent." See Estate of Morris, 297 F. Supp. 2d at 686; see also Penlyn Development Corp. v. Inc. Village of Lloyd Harbor, 51 F. Supp. 2d 255, 264 (E.D.N.Y. 1999) ("The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.").

Likewise, there is no evidence that the Naked Cowboy received differential treatment.   Mr. Mercier has provided no evidence regarding the NYPD's alleged preferential treatment toward the Naked Cowboy.   He merely relies on an inadmissible hearsay statement by an NYPD officer to the effect that the Naked Cowboy is immune from citations because of his popularity.   (Compl., ¶ 28). A party cannot rely on inadmissible hearsay in opposing a motion for summary judgment absent a showing that admissible evidence will be available at trial.   Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 924 (2d Cir. 1985); see also   AXA Equitable Life Ins. Co. v. Bonded Life Fund, LLC, 12 Civ. 5419,

2013 WL 1453267, at *6 (S.D.N.Y. April 9, 2013) (evidence proffered by party opposing summary judgment must be of type that would be admissible at trial.).   Mr. Mercier has made no showing that admissible evidence will be available at trial to show that the Naked Cowboy received differential treatment.

2.   <u>Impermissible Considerations</u>

Even if the plaintiff had satisfied the first prong, he has not produced any evidence to establish that the differential treatment was based on impermissible considerations.   <u>See</u> <u>Harlen Associates</u>, 273 F.3d at 499; <u>LeClair</u>, 627 F.2d at 608-10.   Mr. Mercier's allegations that he was subject to enforcement efforts while the Naked Cowboy was not, even if true, do not prove that he was targeted because of the exercise of his constitutional rights, his membership in a suspect class, or an intent to injure him.   <u>See</u> <u>Harlen Associates</u>, 273 F.3d at 499; <u>LeClair</u>, 627 F.2d at 608-10.

Because Mr. Mercier has not established his claim of selective enforcement, I recommend that the defendants' motion for summary judgment be granted as to the Equal Protection claims.

D.   <u>Commissioner Kelly</u>

Mr. Mercier sues Commissioner Kelly in both his official and personal capacities.   As an initial matter, the claim against Commissioner Kelly in his official capacity should be dismissed as duplicative of the plaintiff's claim against the City, because a

suit for monetary damages against a municipal officer in his official capacity is no different from a suit against the municipality itself. See Rodriquez v. Knapp, No. 12 CV 3253, 2012 WL 5466159, at *3 (E.D.N.Y. Nov. 8, 2012) (citing Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989)). The claim against Commissioner Kelly in his personal capacity fails because there is no evidence that he was personally involved in the alleged deprivation of Mr. Mercier's constitutional rights. "[T]he plaintiff must allege sufficient facts to demonstrate that defendants were personally or directly involved in the violation, that is, that there was 'personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal.'" Harris v. Westchester County Department of Corrections, No. 06 Civ. 2011, 2008 WL 953616, at *9 (S.D.N.Y. April 3, 2008) (alteration in original) (quoting Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001)); see Murray v. Koehler, 734 F. Supp. 605, 606 (S.D.N.Y. 1990) ("A supervisory official is not liable under section 1983 by virtue of his subordinate's actions; rather, he must be shown to have 'some personal responsibility.'" (quoting Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989))). "[M]ere 'linkage in the [] chain of command' is insufficient to implicate a [supervisory official] in a § 1983 claim." Richardson v. Goord, 347 F. 3d 431, 435 (2d Cir. 2003)

(quoting Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985)).

Mr. Mercier does not allege that Commissioner Kelly was present or involved in the incidents at issue here. Of course, direct participation is not the only circumstance giving rise to supervisory liability. Liability may attach to a supervisor's conduct where (1) the official "'after being informed of a violation through a report or appeal, failed to remedy the wrong'"; (2) the official "'created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom'"; (3) the official "'was grossly negligent in supervising subordinates who committed the wrongful acts'"; or (4) the official "'exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.'" Back v. Hastings on Hudson Union Free School District, 365 F.3d 107, 127 (2d Cir. 2004) (alteration in original) (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)). While there is disagreement within this district as to whether all of these categories of supervisory liability remain viable after Ashcroft v. Iqbal, 556 U.S. 662 (2009), and the Second Circuit has yet to address this issue, the majority view is where "'the constitutional claim does not require a showing of discriminatory intent . . . the personal involvement analysis set forth in Colon v. Coughlin may still apply.'" Shepherd v. Powers, No. 11 Civ.

13

6860, 2012 WL 4477241, at *10 (S.D.N.Y. Sept. 27, 2012) (quoting Sash v. United States, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009)); see also Bertuglia v. City of New York, 839 F. Supp. 2d 703, 720-23 (S.D.N.Y. 2012) (considering the five categories of supervisory liability in retaliation case); Malik v. City of New York, No. 11 Civ. 6062, 2012 WL 3345317, at *14-15 (S.D.N.Y. Aug. 15, 2012) (same).

Here, Mr. Mercier accuses Commissioner Kelly of maintaining a policy of harassing street performers.   However, he has not produced any admissible evidence to demonstrate that such a policy exists or that Commissioner Kelly created or acquiesced in it.   The plaintiff merely relies on several newspaper articles that, according to him, document NYPD's policy of targeting costumed street performers.   (Pl. Memo. at 9).   However, newspaper stories are not admissible evidence.   See Pooler v. Nassau County University Medical Center, 848 F. Supp. 2d 332, 351 n.14 (S.D.N.Y. 2012) (holding that newspaper articles did not constitute admissible evidence); see also McCallister v. New York City Policy Department, 49 F. Supp. 2d 688, 705 n.12 (S.D.N.Y. 1999) (ruling that newspaper articles are inadmissible hearsay and thus cannot constitute evidence of policy or custom); Molinary v. Bloomberg, 596 F. Supp. 2d 546, 580 n.28 (E.D.N.Y. 2009).

Because Mr. Mercier fails to establish Commissioner Kelly's

14

supervisory liability, I recommend that the defendants' motion for summary judgment be granted as to the claims against Commissioner Kelly.

    E.   <u>Municipal Liability</u>

Mr. Mercier asserts a claim against the City under Section 1983, which "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979). Section 1983 provides that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must allege that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution [or laws] of the United States." <u>Snider v. Dylan</u>, 188 F.3d 51, 53 (2d Cir. 1999); <u>see also</u> <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658, 690-91 (1978).  In the absence of an underlying constitutional

violation, the Court need not reach the issue of municipal liability, because the claim necessarily fails as a matter of law. See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006).

Here, Mr. Mercier fails to demonstrate any constitutional violation. As discussed above, his First Amendment and Equal Protection claims fail. Further, to the extent he is raising a substantive due process claim under the Fourteenth Amendment, this claim fails as well. In order to establish such a claim, he must demonstrate that the government action was arbitrary or shocking to the conscience by showing that the "official conduct [was] outrageous and egregious under the circumstances" and that it was "truly brutal and offensive to human dignity." Lombardi v. Whitman, 485 F.3d 73, 81 (2d Cir. 2008) (internal quotation marks omitted). The alleged conduct, even if true, plainly does not rise to such an extreme level. Finally, his claim that Administrative Code § 20-465 does not apply to him does not set forth any constitutional claim. (Compl., ¶¶ 65-66).

Even assuming, arguendo, that there has been a constitutional injury here, Mr. Mercier fails to establish municipal liability. In order to prevail on a Section 1983 claim against the City, the plaintiff must show that a municipal policy or custom caused the deprivation of his constitutional rights. Monell, 436 U.S. at 690-91. Alternatively, liability may be established when a

16

municipality's failure to train or supervise its employees is so severe as to amount to "deliberate indifference" to the constitutional rights of others.  City of Canton v. Harris, 489 U.S. 378, 392 (1989).  Mr. Mercier's claim fails under either theory.

      1.   Municipal Policy or Custom

An "official policy" may be implemented through a "'policy statement, ordinance, regulation, or decision'" that is officially promulgated by a municipality's policy makers.  Anthony v. City of New York, 339 F.3d 129, 139 (2d Cir. 2003) (quoting Monell, 436 U.S. at 690).  A "custom," for the purposes of municipal liability, must be so entrenched and well-established as to constitute a practice with the force of law.  Patterson v. County of Oneida, New York, 375 F.3d 206, 226 (2d Cir. 2004).  Under Monell, a municipality cannot be held liable for the acts of its employees based on a theory of respondeat superior.  Monell 436 U.S. at 691-95; see also Ricciuti v. New York City Transit Authority, 941 F.2d 119, 122 (2d Cir. 1991).  Hence, "'a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.'"  DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998) (quoting Ricciuti, 941 F.2d at 123).  However, a court may find that a municipal policy or custom existed if, when "faced with a pattern of

misconduct[, it] does nothing, compelling the conclusion that [it] has acquiesced in or tacitly authorized its subordinates' unlawful actions." <u>Reynolds v. Giuliani</u>, 506 F.3d 183, 192 (2d Cir. 2007).

Mr. Mercier argues that the NYPD's policy of ticketing costumed street performers violated his constitutional rights. (Pl. Memo. at 9). However, as discussed, he provides no admissible evidence to support this claim and merely relies on inadmissible newspaper articles. Nor has he produced evidence to show a pattern of misconduct to suggest a municipal policy or custom. Therefore, he fails to demonstrate the existence of a municipal policy. <u>See Campbell v. City of New York</u>, No. 06 Civ. 5743, 2010 WL 2720589, at *9 (S.D.N.Y. June 30, 2010) (granting defendant's summary judgment motion because plaintiff provided "no evidence whatsoever of a custom or policy that led to any of the alleged constitutional violations").

### 2.   <u>Failure to Train</u>

To hold the City liable under the failure to train theory, a plaintiff must show that the City's failure to train "amount[s] to 'deliberate indifference to the rights of persons with whom the untrained employees come into contact.'" <u>Connick v. Thompson</u>, __ U.S. __, __, 131 S. Ct. 1350, 1359 (2011) (quoting <u>City of Canton</u>, 498 U.S. at 388). Deliberate indifference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a

18

known or obvious consequence of his action." Id. at 1360 (internal quotation marks omitted).  "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for the purposes of failure to train." Id. (internal quotation marks omitted).

Mr. Mercier has not conducted any discovery or advanced any arguments in his brief regarding the City's training program. Further, the Complaint fails to allege any facts suggesting that the City's policy-makers deliberately ignored "the risk that its employees would unconstitutionally apply its policies without more training." Amnesty America v. Town of West Hartford, 361 F.3d 113, 129 (2d Cir. 2004).  Thus, he has not shown that any deficiencies in the training program caused the alleged constitutional violation or that the failure to train was the product of deliberate indifference.  See id.; see, e.g., Okin v. Village of Cornwall-On-Hudson Police Department, 577 F.3d 415, 440-41 (2d Cir. 2009) (To establish a failure to train claim, "[t]he plaintiff must offer evidence to support the conclusion that the training program was inadequate, not that a particular officer may be unsatisfactorily trained or that an otherwise sound program has occasionally been negligently administered, and that a hypothetically well-trained officer would have avoided the constitutional violation." (internal quotations marks and brackets

19

omitted)).

Accordingly, I recommend that the defendants' motion for summary judgment be granted as to the plaintiff's claims against the City.

<u>Conclusion</u>

For the foregoing reasons, I recommend that the defendants' motion for summary judgment (Docket no. 33) be granted and the plaintiff's complaint be dismissed.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Andrew L. Carter, Jr., Room 435, 40 Foley Square, New York, New York 10007, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.


Respectfully submitted,


JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE


20

Dated:     New York, New York
           April 30, 2013

Copies mailed this date to:

Steven Mercier
6 Essex Street
Belleville, NJ 07109

Nicholas R. Ciapetta, Esq.
Assistant Corporation Counsel
100 Church Street
New York, New York  10007